IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROGER SCOTT BRYNER,<br><br>Plaintiff,<br><br>vs.<br><br>MANCINI, WELCH & GEIGER LLP, JAMES W. GEIGER; as an individual, MAUI URGENT CARE, entity, and H. TAVAKOLI, individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO STRIKE<br><br><br><br>Case No. 2:09-CV-1060 TS |

This matter is before the Court on Defendants' three Motions to Dismiss based on lack of personal jurisdiction. Plaintiff is pro se and alleges five causes of action: Federal Debt Collection Practices Act, Fraud, Racketeering, Removal, and Declaratory Relief. Plaintiff has also filed a Motion to Strike Defendants Maui Urgent Care and Tavakoli's motion to dismiss. For the reasons stated below the Court will grant Defendants' Motions and deny Plaintiff's Motion.

## I. Background

This action surrounds an injury to Plaintiff's son that occurred while in Hawaii, but the action itself is brought under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. Plaintiff is a resident of Utah. All Defendants, both individuals and entities, are residents of Hawaii.

The following facts are taken from the Amended Complaint.[1] While Plaintiff and his son were vacationing in Hawaii, the son "gouged" his knee on a piece of coral and because part of the wound was "highly irregular," it needed to be excised.[2] Somehow Plaintiff and his son ended up visiting Defendant Tavakoli, who allegedly indicated to Plaintiff the cost of stitching up the wound would be $300.

When Plaintiff paid Defendant Tavakoli the $300, he was allegedly told he owed an additional $219.79.[3] It appears from the Amended Complaint that this correspondence took place once Plaintiff was back in Utah, as he then alleges that he agreed to pay the remainder by faxing a credit card sent at 10:00 p.m. "my time on 4/15/2009."[4] Plaintiff then received a phone call from Defendant Maui Urgent Care ("Defendant Maui Care"), who was allegedly acting as a debt collector for Defendant Tavakoli. Plaintiff alerted Defendant Maui Care that he was taping the conversation, but Plaintiff states that Defendant Maui Care did not state the phone call was an

---

[1] Docket No. 4.

[2] *Id.* at ¶ 13.

[3] *Id.* at ¶ 16.

[4] *Id.*

2

attempt to collect a debt, nor that any information discussed during the call would be used for that purpose. Plaintiff did however allegedly ask Defendant Maui Care if they routinely engaged in collection activities, to which it allegedly responded yes. Based on Defendant Maui Care's response, Plaintiff alleges he believed it was covered by the FDCPA.

Defendant Maui Care allegedly proceeded to threaten Plaintiff to make payment arrangements immediately or face further action. Defendant Tavakoli then allegedly represented to Plaintiff that he had made a mistake in the prescription for the antibiotics given to Plaintiff's son, resulting in a necessary co-pay and duplicate prescription to replace the incorrect one. Plaintiff alleges he told Defendant Tavakoli he would fax over credit card authorization, but that Defendant Tavakoli denied this offer and instead stated that Plaintiff could have "as long as [he] needed."[5]

At some point Plaintiff alleges the debt was transferred to Defendants Geiger and Mancini, Welch & Geiger LLP ("Defendant Mancini"). In the alternative, Plaintiff argues that Defendant Maui Care violated the FDCPA by engaging in further collection efforts including two letters and filing a suit against Plaintiff in Hawaii. Defendants Geiger and Mancini allegedly sent Plaintiff a demand letter. Plaintiff alleges he responded to this letter challenging the debt and seeking verification from Defendants Geiger and Mancini but never received a response.

At some point Plaintiff was notified, by letter, that a summons had run in a Maui newspaper, but there was no complaint attached to that summons. Plaintiff filed a motion to dismiss for failure to state a claim in that action which has not yet been ruled on. He alleges that

---

[5]*Id*. at ¶ 22.

he has never been served with, mailed, or sent in any form a copy of that complaint.

## II. Standard of Review

Plaintiff has the burden of establishing personal jurisdiction over each Defendant.[6] At the pleading stage, "when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing that jurisdiction exists."[7] "All factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing."[8] "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case."[9] "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[10] Thus, as the forum state, Utah law governs.[11]

"[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the

---

[6] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).

[7] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009); *see also Soma Med. Int'l*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Hafen v. Strebeck*, 338 F.Supp. 2d 1257, 1260 (D. Utah 2004).

[8] *Rusakiewicz*, 556 F.3d at 1100.

[9] *Shanks v. Westland Equipment and Parts Co.*, 668 F.2d 1165, 1166 (10th Cir. 1982).

[10] *Soma Med. Int'l*, 196 F.3d at 1295 (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[11] *Rusakiewicz*, 556 F.3d at 1100 (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

4

defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'"[12]

Utah's long-arm statute provides in pertinent part as follows:

> Any person . . . who in person or through an agent does any of the following enumerated acts, submits himself . . . to the jurisdiction of the courts of this state as to any claim arising out of that or related to:
>
> the transaction of any business within this state; contracting to supply services or goods in the state; the causing of any injury within this state whether tortious or by breach of warranty.[13]

The Utah legislature has declared that the long-arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[14] "The long-arm statute itself defines the transaction of business broadly, as activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah."[15]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or

---

[12]*Nat'l Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995).

[13]UTAH CODE ANN. § 78B-3-205 (West 2009).

[14]*Id*. § 78B-3-201.

[15]*Soma Med.*, 196 F.3d at 1297-98 (internal citations omitted).

5

relations.'"[16] Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimum contacts' between the defendant and the forum state."[17] The "minimum contacts" necessary for specific personal jurisdiction are established "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[18] Purposeful availment exists where a party has "created 'continuing obligations' between himself and residents of the forum" and where "his activities are shielded by 'the benefits and protections' of the forum's laws."[19] If the defendant's activities create sufficient minimum contacts, we then consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"[20]

We therefore examine the quantity and quality of Defendants' contacts with Utah, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing,"[21] and then assess whether the cause of action arises out of those contacts to determine whether the exercise of personal jurisdiction over a

---

[16]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

[17]*World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[18]*OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp.*, 471 U.S. at 472).

[19]*Burger King Corp.*, 471 U.S. at 476 (internal citations omitted).

[20]*OMI Holdings, Inc.*, 149 F.3d at 1091.

[21]*Burger King Corp.*, 471 U.S. at 479.

defendant comports with due process.[22]

### III. Discussion

Plaintiff alleges multiple violations of the FDCPA including failure of Defendant Maui Care to identify itself as a bill collector, false statements in a threat to collect debt, and lack of follow up letter within five days. Defendants argue the Court lacks personal jurisdiction over them because they were not personally served in Utah and do not have sufficient minimum contacts to satisfy the Utah long arm statute or other due process requirements. In the alternative, Defendants argue that proper service was not made pursuant to Fed.R.Civ.P. 4. Because the Court must have personal jurisdiction over the parties to bind them to any decisions of the Court, the personal jurisdiction issue will be addressed first.[23]

In his Amended Complaint, Plaintiff states the addresses of each Defendant, then states that "Federal questions under the FDCPA exist, thus jurisdiction is proper."[24] Plaintiff alleges one phone call from Defendant Maui Care to his home. Plaintiff alleges another phone call from Defendant Tavakoli. Plaintiff alleges that Defendants Geiger and Mancini sent two letters to him, at his home in Utah. Plaintiff also states multiple times that he did not receive certain letters or communications from Defendants Geiger and Mancini that he had expected to receive, or that he believed he was due based on the FDCPA.

Plaintiff has not alleged Defendants have transacted business within the state, contracted

---

[22] *Soma,* 196 F.3d at 1298.

[23] *See Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000).

[24] Docket No. 4, at ¶ 10.

7

to supply services or goods, or caused injury in Utah. Consequently, he has not alleged any conduct implicating Utah's long arm jurisdiction and, therefore, has not established personal jurisdiction over Defendants.

Plaintiff's assertion that the FDCPA is implicated creating jurisdiction in the Court is partially correct. When a federal question, such as FDCPA, is implicated, subject matter jurisdiction is satisfied. However, the Court must have subject matter and personal jurisdiction over the parties. Merely asserting proper subject matter jurisdiction is not sufficient to implicate personal jurisdiction under the Due Process Clause.

Plaintiff further asserts that jurisdiction is proper due to the "collection of phone calls a[nd] letters sent by defendants to Utah under the FDCPA, and the fraudulent content of those letters."[25] Plaintiff relies on *Brink v. First Credit Res.*,[26] for the proposition that "all federal courts have routinely held that sending a piece of mail to an out of state residence, or placing or participating in an interstate collection phone call are ground for venue in the state of the receiving party under the FDCPA."[27]

The Court first notes that the issue currently before it is one of personal jurisdiction, not venue. Second, in *Brink*, defendants drafted and sent many letters to plaintiff and class members inviting them to establish a credit card, thereby promoting the transaction of business in the

---

[25]Plaintiff's Memorandum in Opposition to Motion to Dismiss and in Support of Default of Mancini, Welch, and Geiger LLP, Docket No. 16 at ¶ 9.

[26]57 F.Supp.2d 848 (D. Ariz. 1999).

[27]Docket No. 16, at 2.

forum state.[28] The *Brink* court found jurisdiction was proper because defendants were promoting the transaction of business which it found sufficient to establish purposeful availment.[29] In this case, the facts as alleged to the Court involve two letters from Defendants relating to business that was transacted in Hawaii. Third, the Court acknowledges that a single letter or phone call to a forum may be enough to meet due process standards as long as that single contact creates a substantial connection with the forum.[30] However, the Court finds that the substance of the letters as alleged by Plaintiff do not create a substantial connection to the forum. As already stated, the letters involved the collection of two hundred dollars based on services already rendered, which were rendered in Hawaii. Further, as far as Plaintiff alleges the letters contained threats, the Court understands these "threats" to be further legal action in Hawaii, which again, does not implicate Utah.

Because the Court finds personal jurisdiction is lacking, it will not address the Rule 4 arguments.

Plaintiff has also filed a Motion to Strike Defendants Maui Care and Tavakoli's Motion to Dismiss based on Rule 12(f) because Plaintiff claims the parties were served by a process server on February 3, 2010. Because the Court has already found that it lacks personal jurisdiction over these Defendants, issues surrounding their proper service are moot. Therefore, the Court will deny that motion.

---

[28]*Id*. at 860-61.

[29]*Id*.

[30]*Rambo v. American So. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (citing *Burger King*, 471 U.S. at 475).

## IV. Conclusion

Based on the above, it is hereby

ORDERED that Defendant James W. Geiger's Motion to Dismiss (Docket No. 5) is GRANTED. It is further

ORDERED that Defendant Mancini, Welch & Geiger, LLP's Motion to Dismiss (Docket No. 9) is GRANTED. It is further

ORDERED that Defendants Maui Urgent Care, Inc., and H. Tavakoli's Motion to Dismiss (Docket No. 12) is GRANTED. It is further

ORDERED that Plaintiff's Motion to Strike (Docket No. 18) is DENIED.

The hearing set for April 8, 2010 is STRICKEN.

The Clerk of the Court is directed to close this case forthwith.

DATED   April 7, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge